# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### HUNTINGTON DIVISION

| | |
|---|---|
| BRIOVARX, LLC, an Alabama corporation,<br><br>    Plaintiff,<br><br>v.<br><br>JENNIFER JOHNSON, an individual, RICHARD A. JOHNSON, an individual, and DOGWOOD PHARMACY, INC., a Florida corporation, d/b/a MEDSCRIPTS MEDICAL PHARMACY,<br><br>    Defendants. | No. 3:13-cv-12049<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, BriovaRx, LLC ("BriovaRx" or "Plaintiff"), an Alabama limited liability company, by and through its attorneys, against Defendants Jennifer Johnson, Richard A. Johnson and Dogwood Pharmacy, Inc. (collectively "Defendants"), states its Complaint and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. This is a Complaint for breach of contract, breach of the duty of loyalty, and tortious interference with prospective business advantage arising under West Virginia common law, as well as Copyright Infringement arising under 17 U.S.C. § 101, *et. seq.* and Unfair Competition arising under § 43 of the Lanham Act, 15 U.S.C. Plaintiff seeks injunctive relief and actual damages, including Defendants' profits and Plaintiff's costs and attorneys' fees under West Virginia law and 15 U.S.C. § 1117.

### Parties

2. BriovaRx is a limited liability company organized in the State of Alabama with

its principal place of business at 2441 Warrenville Road, Suite 610, Lisle, Illinois 60532.

3. Jennifer Johnson ("Mrs. Johnson") is an individual residing at 280 Fairview Road, Fraziers Bottom, Putnam County, West Virginia 25082.

4. Richard A. Johnson ("Mr. Johnson") is an individual residing at 280 Fairview Road, Fraziers Bottom, Putnam County, West Virginia 25082. Together, Mr. and Mrs. Johnson are referred to herein as "the Johnsons."

5. Upon information and belief, Dogwood Pharmacy, Inc. ("Dogwood") is a corporation incorporated in the state of Florida with its principal place of business at 376 South Northlake Boulevard, Suite 1008, Altamonte Springs, Florida 32701.

6. Upon information and belief, Dogwood owns and operates a business called MedScripts Medical Pharmacy ("MedScripts") with an office located at 3859 Teays Valley Road, Suite 2, Hurricane, Putnam County, West Virginia 25526.

## Jurisdiction

7. This court has original jurisdiction over the matters raised herein pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332(a)(1), and 28 U.S.C. § 1338(a) and (b). The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

## Venue

8. Venue in this matter is proper in this District is proper pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to the claims occurred, and continue to occur, in this District and all Defendants reside in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### BriovaRx and the Specialty Pharmacy Industry

9. BriovaRx is a specialty pharmacy. A specialty pharmacy provides medications created to target and treat complex medical conditions and rare diseases. These medications are

often referred to as "therapies" for particular conditions. Such medications often require special handling, including refrigerated transportation and sometimes self-administration training for end-users and/or their family members to promote their safe and efficacious use. BriovaRx provides these various services, among others, along with filling the prescriptions for these medications.

10. In its business, BriovaRx is referred by physicians to its patient customers to provide the specialized medications and other therapy services.

11. BriovaRx has pharmacy locations in Alabama, Georgia, Kansas, Louisiana, Massachusetts, Maine, Mississippi, Nevada, Tennessee, Texas and West Virginia. Some specialty pharmacy prescriptions are also filled at these pharmacies for mailing to other states.

12. Among BriovaRx's specialty pharmacies is a pharmacy located at 206 Roxalana Business Park, Dunbar, West Virginia.

13. The specialty pharmacy industry is highly competitive. In 2011, specialty medication sales made up $77.5 billion of all prescription drug sales.

14. Building, obtaining and maintaining referral relationships with the specific healthcare professionals who prescribe specialty medications and customer relationships with the patients for whom the medications are prescribed takes years of painstaking marketing and sales efforts. BriovaRx invests heavily in the development of its national marketing and sales force for this purpose.

15. Prescription information received from medical providers constitutes highly confidential information and includes personal health information subject to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). It includes confidential patient information, including names and other patient identifying data, medical conditions and

3

medications. Such information is also of great commercial value within the specialty pharmacy industry.

### Defendant Johnsons' Employment at BriovaRx

16. On February 26, 2007, Mrs. Johnson began working for Medfusion, BriovaRx's predecessor, as a specialty pharmacy sales representative. By the time she was a BriovaRx employee, her sales territory had grown to include West Virginia, Virginia, North Carolina and parts of Ohio, Indiana, Kentucky, and Pennsylvania.

17. The primary specialty therapies which Mrs. Johnson sold on behalf of BriovaRx were to treat Hepatitis C and Autoimmune disorders. Hepatitis C is an infectious disease of the liver caused by the Hepatitis C virus, which can cause short-lived and mild symptoms, or result in life-long illness leading to cirrhosis of the liver or liver cancer. Autoimmune disorders attack and destroy healthy body tissue.

18. On August 3, 2009, Mrs. Johnson's husband, Mr. Johnson, joined Medfusion as a specialty pharmacy sales employee. By the time he was a BriovaRx employee, his sales territory had grown to include West Virginia, Virginia, Kentucky, and Ohio.

19. The primary specialty services and therapies which Mr. Johnson sold on behalf of BriovaRx were human growth hormones primarily used for children and adolescents with developmental and related disabilities. Mr. Johnson also sold therapies to treat Respiratory Syncytial Virus, a virus that causes respiratory tract infections in premature infants and children less than two years of age.

20. Mr. and Mrs. Johnson's most recent commission agreements with Medfusion were entered into on April 5, 2012 and April 4, 2012, respectively (the "Commission

Agreements"). Copies of the Johnsons' Commission Agreements are attached hereto at Exhibit A.

21. In December 2010, SXC Health Solutions Corp. purchased all of Medfusion's business assets and property, including any and all copyrights, and also undertook to employ most or all of Medfusion's employees. The operational transition from Medfusion to BriovaRx did not occur until approximately October 1, 2012. In this process, the business was also renamed "BriovaRx."

22. As sales employees, the Johnsons' duties to Medfusion and subsequently to BriovaRx included making direct sales calls on nurses and physicians who refer patients for specialty drug services, following-up on all referrals to ensure customer satisfaction, facilitating necessary patient education, helping customers understand third-party reimbursement, coordinating medication training or instructions, and dealing with drug manufacturers, when necessary.

23. Mrs. Johnson had numerous sales accounts assigned by BriovaRx throughout her territory, including West Virginia. BriovaRx paid Mrs. Johnson on a commission basis with a draw. Mrs. Johnson earned as much as $30,000 or more in monthly commissions. In connection with her employment duties and responsibilities to BriovaRx only, and only for purposes of advancing BriovaRx's business interests, BriovaRx gave Mrs. Johnson access to and use of various, highly valuable forms of BriovaRx's confidential and/or proprietary business information upon the express condition that such information be kept and maintained confidential, used only for BriovaRx's business purposes, and not used or disclosed to others, nor exploited or used in competition with BriovaRx.

24. Mr. Johnson also had a number of sales accounts assigned to him by BriovaRx. BriovaRx also paid Mr. Johnson a salary and monthly commissions as high as $10,000. In connection with his employment duties and responsibilities to BriovaRx only, and only for purposes of advancing BriovaRx's business interests, BriovaRx gave Mr. Johnson access to and use of various, highly valuable forms of BriovaRx's confidential and/or proprietary business information upon the express condition that such information be kept and maintained confidential, used only for BriovaRx's business purposes, and not used or disclosed to others nor exploited or used in competition with BriovaRx.

25. As part of her job duties and responsibilities to BriovaRx, BriovaRx also entrusted Mrs. Johnson with responsibility for actively training other BriovaRx sales persons throughout the country regarding BriovaRx's sales strategies and marketing tactics, and in this capacity too, BriovaRx entrusted Mrs. Johnson with highly valuable forms of BriovaRx's confidential and/or proprietary business and training information upon the express condition that such information be kept and maintained confidential, used only for the BriovaRx's business purposes, and not used or disclosed to others, nor exploited or used in competition with BriovaRx.

### The Johnsons' Confidentiality Obligations

26. The Commission Agreements contained an express Nondisclosure of Confidential and Proprietary Information Obligation ("Confidentiality Obligation"). As part of the Confidentiality Obligation, the Johnsons agreed not to disclose or use any of Medfusion's (and later BriovaRx's) Confidential and Proprietary Information due to its great value in the highly-competitive specialty pharmacy field. Specifically, through the Confidentiality Obligation, the Johnsons recognized and acknowledged that BriovaRx has a legitimate interest

in safeguarding its Confidential and Proprietary Information from disclosure or use following the Johnsons' departure from BriovaRx. Therefore, pursuant to the Confidentiality Obligation, the Johnsons both agreed that after termination of their employment they would "not disclose any of the [c]ompany's Confidential and Proprietary Information or make use of it for [their] own purposes or the purposes of another."

27. Under the Confidentiality Obligation, Confidential and Proprietary Information was defined to include, though not be limited to

> …methods of doing business; sales, marketing, and service strategies, programs, and procedures; contract expiration dates, customers and prospective customers, including, but not limited to, their particularized requirements and preferences, and the identity, authority, and responsibilities of their key contact persons; service and products costs; pricing structures and incentive plans; vendors; financial position and business plans; computer programs and databases;…and any other information of the Company or any of its vendors or customers that the Company informs Employee, or which Employee should know by virtue of Employee's position or the circumstances in which Employee learned it, is to be kept confidential.

28. In addition to this most recent contractual obligation which each of the Johnsons freely undertook as a condition of their employment, the Johnsons were previously on notice of, acknowledged and agreed to abide, as a condition of their employment, by Medfusion's (and later BriovaRx's) company policies regarding confidential information throughout their Medfusion, and subsequently BriovaRx, employment. Mrs. Johnson signed a receipt for her Medfusion employee handbook on February 26, 2007. Mr. Johnson signed a receipt for his Medfusion employee handbook on July 21, 2009. The Medfusion employee handbook included a policy that provided, in part:

> The relationship between MedfusionRx and patient is both legally and ethically confidential. All employees are required to abide by MedfusionRx's Employee Confidentiality/HIPAA Statement. All

information that the employee acquires during the course of their employment should be treated as such.

29. Medfusion's HIPAA policy provided, in part, that:

> Confidential information is valuable and sensitive and is protected by law (HIPAA) and MedfusionRx policies and procedures. The intent of these laws and policies is to ensure that confidential information remain confidential, that is it will only be used as necessary to accomplish the organization's mission. All employees must conform to applicable laws and Company policies governing confidential information.

30. BriovaRx's employee handbook also includes a policy regarding an employee's obligation not to remove or copy company documents, data, files, records, correspondence, brochures, financial records and materials relating to BriovaRx's business, except as required in the course of the employee's employment. The policy also provides that such materials "are the exclusive property of the [c]ompany and must be turned over to the [c]ompany immediately upon request or upon termination of employment."

31. Both Johnsons also received specific training from BriovaRx with regard to its Code of Business Conduct and Ethics, which methodically covers HIPAA confidentiality requirements.

32. Separate and apart from, and in addition to, the policies set forth in the companies' employee handbooks, both of the Johnsons signed Employment Confidentiality Agreements when they began their employment with Medfusion. Those agreements provided, in part, that each employee understood that he or she would have access to patient charts and patient information as part of the employment position. The agreements also required that the employee recognize the following:

> I understand that all information pertaining to patients and their healthcare will be kept confidential and must not be disclosed to anyone. This includes family members or friends outside the

8

company and/or any company employee who is not entitled to the information, either during or after employment.

33. In the course of their Medfusion and BriovaRx employment, Medfusion, and later BriovaRx, provided the Johnsons with access to highly valuable, sensitive, proprietary and confidential information that was not generally available to the public or BriovaRx's competitors, including, but not limited to, sales plans, marketing strategies, provider lists, patient and medication lists, manufacturer contracts and account information, insurance payer information and sales and marketing training materials.

34. All of these documents and all of this information was necessary to the Johnsons' performing their employment duties exclusively for Medfusion and subsequently BriovaRx, but protected from disclosure both during and after employment as set forth in the many policies and agreements set forth above, in addition to the HIPAA requirements.

## BriovaRx's Registered Copyright

35. In order to fulfill prescription orders for various drugs fully, effectively, efficiently and safely, BriovaRx has particularized, useful referral forms it provides to prescribers. These same types of forms were used by Medfusion prior to the BriovaRx purchase.

36. In her work, Mrs. Johnson, used one such form for prescriptions of Hepatitis C medications. She used the referral form as an employee of both Medfusion and BriovaRx.

37. Any contribution Mrs. Johnson made to the drafting of the form constituted work-for-hire as part of her employment relationship with both Medfusion and BriovaRx.

38. The last form that Mrs. Johnson used for this purpose was BriovaRx's Hepatitis C Therapies Prescription Referral Form. A copy of the form is attached as Exhibit B.

CHICAGO/#2446774.8

39. BriovaRx is the uncontested and sole owner of the United States copyright of this form, having applied for such registration on May 3, 2013. A copy of the Application of Registration is attached as Exhibit C.

40. A similar version of the Hepatitis C Therapies Prescription Referral Form was previously used by Mrs. Johnson on behalf of Medfusion. Due to its acquisition and ownership of Medfusion, assets thereof including copyrights, and its copyright of this work for hire, BriovaRx is the uncontested and sole owner of any prior versions of this form.

41. BriovaRx, through this valid and enforceable registration is entitled to all rights accorded under the copyright statutes.

42. Mrs. Johnson, as an agent of both Medfusion and BriovaRx, used the Hepatitis C Therapies Prescription Referral Form to market to and obtain numerous prescribers and patient prescription referrals throughout her Medfusion and BriovaRx employment.

43. BriovaRx's customers in various states, including West Virginia, recognize the Hepatitis C Therapies Prescription Referral Form as BriovaRx's and associate their referrals to BriovaRx therewith. The form is associated in commerce with BriovaRx, which itself is identified with high quality, responsive, safe and effective specialty pharmacy services in the specialty pharmacy industry. BriovaRx, and before it Medfusion, invested substantial time, effort, money and resources in the process of creating, enhancing and maintaining the goodwill deriving from the association of the Medfusion and BriovaRx names with high quality, responsive, safe and effective specialty pharmacy services.

### Defendant Johnsons' Departure and Illegal Use of BriovaRx's Copyright

44. The Johnsons submitted their resignations to BriovaRx on March 6, 2013, effective March 22, 2013. They later requested that they be permitted to work through the end

of March.

45. After receiving the Johnsons' resignations, BriovaRx's managers inquired with Mrs. Johnson as to her and her husband's future employment plans. Mrs. Johnson represented that they had no new employment and no intention of working in the near future. Instead, Mrs. Johnson said that her and her husband were tired and planned to spend time with their children and work on their farm. Mrs. Johnson said that her husband was looking to get out of the healthcare industry altogether.

46. During the first few months of 2013, BriovaRx's Dunbar, West Virginia specialty pharmacy noticed that the new referrals for specialty medications from Mrs. Johnson's territory were declining significantly. Revenues from new referrals within Mrs. Johnson's assigned BriovaRx territory dropped 45%. In Virginia alone, revenues from new referrals for specialty medication prescribers which BriovaRx assigned to Mrs. Johnson dropped 70%. In Kentucky, such revenues dropped 60%.

47. Despite Mrs. Johnson's deliberately misleading representations to the contrary, BriovaRx became concerned that the Johnsons were planning to divert prescriptions of existing BriovaRx customers to a competitor. As a result, BriovaRx requested that the Johnsons stop working as of March 26 and return all company property in their possession.

48. That same week, BriovaRx, through its counsel, sent the Johnsons a reminder letter regarding their Confidentiality Obligations to BriovaRx as set forth herein. Subsequently, BriovaRx received the Johnsons' work iPads and Mrs. Johnson's laptop computer issued by BriovaRx. They also returned various marketing materials.

49. On April 11, 2013, BriovaRx received the Defendants' announcement of the opening of MedScripts in West Virginia. A copy of the announcement is attached as Exhibit D.

11

The announcement identified Mr. Johnson as MedScripts' General Manager and Mrs. Johnson as MedScripts' Regional Account Director. It also identified as new MedScripts employees with whom the Johnsons were working two other former BriovaRx employees who departed in March 2013 evidently to join MedScripts: Kara Reid and Tracy Westfall.

50. The announcement advertised MedScripts as "a single point of contact" to "meet all" customer needs while "offering personal touch service" to physician offices and patients.

51. Attached to the announcement was a purported MedScripts "HVC Prescription Form" with which prescribers could place pharmacy orders with MedScripts. At the bottom of the form, a statement directed any questions to Mrs. Johnson and provided a phone number. A copy is attached as Exhibit E.

52. Other than MedScripts' logo, the title of the form and Mrs. Johnson's name and number on the bottom, the HVC Prescription Form is identical to BriovaRx's copyrighted Hepatitis C Therapies Prescription Referral Form.

53. At the time BriovaRx received the MedScripts announcement and accompanying "MedScripts" "HVC Prescription Form", one prescriber's office inquired as to whether MedScripts was a new name for BriovaRx. The prescriber's office thought the form was identical to BriovaRx's and "deceptive."

54. Defendants' use of BriovaRx's Hepatitis C Therapies Prescription Referral Form has created, and continues to create, confusion and deception among both prescribers and patients, as well as a likelihood that prescribers and/or patients may incorrectly believe that the Johnsons are still operating as BriovaRx employees and/or that BriovaRx is associated with MedScripts, and/or that prescriptions placed with MedScripts may be filled by BriovaRx.

55. On May 2, 2013, MedScripts issued a press release announcing its hire of the Johnsons. A copy of the press release is attached as Exhibit F. The press release highlights MedScripts' Hurricane, West Virginia location and describes itself as a "local pharmacy."

56. MedScripts' Hurricane, Virginia location is not licensed by the West Virginia Board of Pharmacy to operate as a pharmacy.

### Defendant Johnsons' Taking and Use of BriovaRx's Confidential Information

57. Upon learning of the Johnsons' direct competition with BriovaRx, and their unauthorized, misleading use of at least one of BriovaRx's copyrighted business documents, BriovaRx further investigated the Johnsons' computer activity prior to their separations from BriovaRx employment.

58. Although BriovaRx's investigation remains on-going, BriovaRx's initial investigation has determined that the Johnsons reviewed, copied from, downloaded from and deleted various company documents stored on a BriovaRx laptop computer two weeks before and on their last day of employment. Forensic computer analysis also reveal that the Johnsons sent to their personal email account multiple other BriovaRx documents on the date Mrs. Johnson submitted her resignation and the surrounding time period. These BriovaRx business documents include, but are not limited to, lists of provider names, lists of sensitive and confidential patient identification, information and medications, contracts with drug manufacturers, internal training materials, and letters to payer networks.

59. These documents, in addition to being confidential and not generally available to either the public or to BriovaRx's competitors such as MedScripts, contain personal health information protected by HIPAA.

60. On April 29, 2013, BriovaRx, through its counsel, sent a cease and desist letter to the Johnsons, as well as a copy thereof to the President of Dogwood. Among other things, the letter demanded that the Defendants (a) stop unfairly using BriovaRx's Hepatitis C Therapies Prescription Referral Form, (b) stop confusing and deceiving customers and prescribers of BriovaRx into thinking MedScripts is associated therewith, (c) provide a list of all customers and prescribers to whom the Defendants provided copies of the form, and (d) return all company confidential and proprietary information and call copies thereof whether in hard-copy or electronic form.

61. On May 3, the Johnsons sent a letter to Plaintiff's counsel contesting that they had done anything wrong or that they had possession of any BriovaRx confidential and proprietary information in violation of their Confidentiality Obligations. The Johnsons also verified that they were employed by MedScripts. On May 6, 2013, Plaintiff's counsel received a call from counsel for Dogwood. Dogwood's counsel requested a copy of BriovaRx's Hepatitis C Therapies Prescription Referral Form, which Plaintiff's counsel provided. Plaintiff's counsel has not received any additional communication from Dogwood's counsel.

## COUNT I

### Breach of Contract (Johnson Defendants)

62. BriovaRx repeats and realleges the contents of paragraphs 1 through 61 as if set forth herein.

63. By receiving the benefit of commissions, Mr. and Mrs. Johnson entered into enforceable Confidentiality Obligations with BriovaRx's predecessor in interest.

64. BriovaRx materially performed all aspects of its agreements with the Johnsons.

65. Mr. and Mrs. Johnson breached their Confidentiality Obligations by, among other things alleged herein, taking and using confidential patient, prescriber and manufacturer information belonging to BriovaRx with which the Johnsons were entrusted.

66. As a result of this breach, BriovaRx has been damaged and disadvantaged in its business while the Johnsons, and through them as its agents Dogwood have engaged in unfair competition. BriovaRx has sustained harm, injury and damages by reason of Defendants' aforesaid unlawful acts in an amount to be proven at trial, which includes, but is not limited to, a significant decline in and loss of new prescription referrals.

## COUNT II

### Violation of the Duty of Loyalty (Johnson Defendants)

67. BriovaRx repeats and realleges the contents of paragraphs 1 through 66 as if set forth herein.

68. Mr. and Mrs. Johnson, by virtue of their employment with BriovaRx, owed BriovaRx a duty to protect, and to not disclose or exploit for themselves or for others confidential and proprietary BriovaRx information entrusted to them as employees of BriovaRx only for purposes of fulfilling their employment duties to BriovaRx.

69. This duty to BriovaRx survived the termination of the Johnsons' employment with BriovaRx.

70. Mr. and Mrs. Johnson breached this duty both near the end of their employment and while employed with BriovaRx, and after the termination of their BriovaRx employment.

71. As a result of the tortious conduct described herein, all of which constitutes unfair competition by the Johnsons and, through them by Dogwood, BriovaRx has been harmed, injured, damaged and disadvantaged in its business, in an amount to be proven at trial,

which includes, but is not limited to, a significant and continuing decline in new prescription referrals.

## COUNT III

**<u>Tortious Interference with Prospective Business Advantage (All Defendants)</u>**

72. BriovaRx repeats and realleges the contents of paragraphs 1 through 71 as if set forth herein.

73. BriovaRx possessed numerous valuable business relationships with patients and prescribers of specialty medications.

74. The Johnsons, in their individual capacities and as agents of Dogwood, are aware of these relationships and have improperly taken confidential and proprietary information derived from and integral to these relationships.

75. The Johnsons, both prior to and after the conclusion of their employment with BriovaRx, have deliberately acted in a manner calculated to undermine and misappropriate to the Johnsons and to MedScripts BriovaRx's valuable relationships with both specialty pharmacy prescribers and patients, as well as the corresponding business and revenues associated with such prescriber and patient relationships.

76. The Johnsons actions, as aforesaid, have, through the present succeeded, and threaten in the future to continue to succeed in undermining BriovaRx's valuable relationships with both specialty pharmacy prescribers and patients and to misappropriate such relationships, business and revenues to the Johnsons and MedScripts.

77. As a result of the Johnsons' aforesaid tortious conduct, both in their individual capacities and as agents of Dogwood, all of which constitutes unfair competition by the Johnsons and, through them by Dogwood, BriovaRx has been harmed, injured, damaged and

disadvantaged in its business, in an amount to be proven at trial, which includes, but is not limited to, a significant and continuing decline in and loss of new prescription referrals.

## COUNT IV

### Copyright Infringement (All Defendants)

78. BriovaRx repeats and realleges the contents of paragraphs 1 through 77 as if set forth herein.

79. Defendants had access by virtue of their employment, to BriovaRx's Hepatitis C Therapies Prescription Referral Form. Defendants have copied and are using a copy of BriovaRx's Hepatitis C Therapies Prescription Referral Form. Defendant's unauthorized use constitutes an infringement of BriovaRx's copyright in the BriovaRx's Hepatitis C Therapies Prescription Referral Form.

80. BriovaRx has no adequate remedy at law. BriovaRx has been irreparably harmed by the conduct and acts of Defendants and these injuries will continue unless Defendants' wrongful conduct is preliminarily and permanently enjoined.

## COUNT V

### Federal Unfair Competition pursuant to
### § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (All Defendants)

81. BriovaRx repeats and realleges the contents of paragraphs 1 through 80 as if set forth herein.

82. The selection, arrangement, and compilation of the elements that form Hepatitis C Therapies Prescription Referral Form as used by BriovaRx in connection with specialty prescriptions is inherently distinctive and/or has acquired secondary meaning in the marketplace.

17

83. Defendants' use of BriovaRx's Hepatitis C Therapies Prescription Referral Form in connection with competing against BriovaRx has and is likely to create confusion, or to cause mistake, or to deceive as to the origin, sponsorship or approval of Defendants' goods and services by BriovaRx, in violation of 15 U.S.C. § 1125.

84. Upon information and belief, because of the market dominance of BriovaRx's use of this form, and because customers have come to recognize the goods and services associated with the use of the form by BriovaRx. Defendants are now deliberately and knowingly using and continue to use the form in bad faith with the intent to trade upon the goodwill established by BriovaRx to create confusion in the public mind and to misappropriate BriovaRx's rights in the goodwill it has established in the form, all to the irreparable injury of BriovaRx.

85. Defendants sent out an announcement and press release holding themselves out to be a properly licensed West Virginia pharmacy.

86. Defendants are not licensed by the West Virginia Board of Pharmacy to operate a pharmacy in Hurricane, West Virginia.

87. Defendants are in violation of 15 U.S.C. § 1125 by falsely representing themselves as a licensed West Virginia pharmacy and this false representation is likely to cause damage to BriovaRx.

88. By reason of Defendants' unlawful activities, BriovaRx has been damaged and BriovaRx is likely to continue to be damaged and to suffer continuing and ongoing severe and irreparable harm, injury and damage for which it lacks a sufficient legal remedy unless Defendants' unlawful activities are restrained and preliminarily and permanently enjoined.

WHEREFORE, BriovaRx respectfully prays that this Court:

(a) Preliminarily and permanently enjoin Defendants, their representatives, officers, directors, agents, servants, employees and attorneys and any and all persons in active concert with them from using all confidential and proprietary information of BriovaRx taken by the Johnsons in violation of their contractual and common law obligations;

(b) Order Defendants, their representatives, officers, directors, agents, servants, employees and attorneys and any and all persons in active concert with them to provide an accounting of all BriovaRx confidential and proprietary information in their possession taken by the Johnsons in violation of their contractual and common law obligations, including any and all copies, electronic or otherwise and on either permanent, temporary or portable devices;

(c) Order Defendants, their representatives, officers, directors, agents, servants, employees and attorneys and any and all persons in active concert with them to provide return and/or destroy all BriovaRx confidential and proprietary information in their possession taken by the Johnsons in violation of their contractual and common law obligations;

(d) Preliminarily and permanently enjoin, pursuant to 15 U.S.C.A. § 1116, Defendants, their representatives, officers, directors, agents, servants, employees and attorneys and any and all persons in active concert with them from using the form or any variations thereof confusingly or deceptively similar to BriovaRx's Hepatitis C Therapies Prescription Referral Form in connection with the promotion, advertising, solicitation, conduct and expansion of Defendants' business or businesses, or otherwise competing unfairly with BriovaRx;

(e) Order, pursuant to 15 U.S.C.A. § 1118, Defendants, their representatives, officers, directors, agents, servants, employees and attorneys and any and all persons in active concert with them to deliver to BriovaRx for destruction all copies, electronic or otherwise, of its Hepatitis C Therapies Prescription Referral Form, or any form confusingly similar thereto;

(f) Find that Defendants have violated the Lanham Act and has committed acts of unfair competition against BriovaRx;

(g) Order an accounting of all of Defendants' profits derived from infringements, and award to BriovaRx exemplary damages, attorneys' fees and costs therefor;

(h) Order monetary relief and damages in the amount of any and all profits derived by Defendants from the sale of its goods and for all damages sustained by BriovaRx by reason of said acts of infringement and unfair competition complained of herein;

(i) Order monetary relief in the amount of treble the amount of actual damages suffered by BriovaRx;

(j) Award BriovaRx's attorneys' fees and costs of this action; and

(k) Award BriovaRx such other and further relief as this Court deems just and proper under the circumstances.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all triable issues.

Respectfully submitted,

BRIOVARX, LLC,

By: /s/ Christopher L. Slaughter
          One of Its Attorneys

Christopher L. Slaughter
**Steptoe & Johnson PLLC**
Chase Center
1000 Fifth Avenue
Suite 250
Huntington, WV 25701
Telephone: (304) 526-8140
Fax: (304) 933-8710

Nicholas Anaclerio (*pro hac vice pending*)
Robert S. Rigg (*pro hac vice pending*)
Scot A. Hinshaw (*pro hac vice pending*)
**Vedder Price P.C.**
222 N. LaSalle St., Suite 2600
Chicago, Illinois 60601
Telephone: (312) 609-7500
Fax: (312) 609-5005

*Attorneys for Plaintiff*